IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-00537-ZLW-CBS

RANDOLPH STEPHEN BAIRD,
        Plaintiff,
v.

CORRECTIONS CORPORATION OF AMERICA,
CROWLEY COUNTY CORRECTIONAL FACILITY,[1]
RICHARD SMELSER, Warden
RICHARD WILSON, Associate Warden,
MARTY FLESCHAKER, Principal,
LINDA LYONS, Clerk,
WILL LAUGHLIN, Case Manager, and
LUCY HERNANDEZ, Grievance Coordinator,
Each and every Defendant in their individual and professional capacity,
        Defendants.

_____

RECOMMENDATION AND ORDER OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

        This civil action comes before the court on: (1) Defendants' Motion for Summary

Judgment (filed July 22, 2010) (doc. # 24); (2) Plaintiff's Motion for Sanctions (filed

November 22, 2010) (doc. # 41); and (3) Plaintiff's Motion for Investigation (filed

December 13, 2010) (doc. # 44).  Pursuant to the Order of Reference dated March 19,

2010 (doc. # 5) and the memoranda dated July 22, 2010 (doc. # 25), November 22,

2010 (doc. # 42), and December 14, 2010 (doc. # 45), these Motions were referred to

_____

        [1]      At a motion hearing held on June 3, 2010, Mr. Baird indicated his intention
to voluntarily dismiss Defendant CCCF because it is not a suable entity.  The court
explained to Mr. Baird that he may file a stipulation to dismiss Defendant CCCF.  To
date, Mr. Baird has not notified the court further of his intention regarding Defendant
CCCF.

1

the Magistrate Judge.  The court has reviewed the Motions, Mr. Baird's "Answer to

Defendant[s'] Motion for Summary Judgment ("Response") (filed November 1, 2010)

(doc. # 39), Defendants' Reply (filed November 10, 2010) (doc. # 40), Defendants'

Response (filed November 30, 2010) (doc. # 43), the affidavit and exhibits, the entire

case file, and the applicable law and is sufficiently advised in the premises.


I.      Statement of the Case

        At all times relevant to the claims in this case, Plaintiff Mr. Baird was incarcerated

in the Crowley County Correctional Facility ("CCCF"), a private prison operated by

Corrections Corporation of America ("CCA") pursuant to a contract with the Colorado

Department of Corrections ("CDOC").  Mr. Baird alleges that Defendants denied him

adequate access to the prison law library in violation of numerous federal and state laws

and CDOC administrative regulations.  (*See* Complaint (doc. # 2) at p. 4 of 8).  Mr. Baird

seeks compensatory and exemplary damages and costs.  (*See* doc. # 2 at pp. 7-8 of 8).

Mr. Baird initially filed his Complaint in the Crowley County District Court, Case No.

2010CV2.  On or about March 8, 2010 Defendants removed this civil action to federal

court pursuant to 28 U.S.C. § 1441(c) on the grounds that Mr. Baird's claims are based

on alleged violations of his constitutional rights, thereby establishing original federal

question jurisdiction in this court under Title 42 U.S.C. § 1983.


II.     Standard of Review

        Defendants move for summary judgment pursuant to Fed. R. Civ. P. 56.

"Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant

summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." *Montgomery v. Board of County Commissioners of Douglas County, Colorado*, 637 F. Supp. 2d 934, 939 (D. Colo. 2009) (internal quotation marks and citations omitted). "When applying this standard, the court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Id.* "All doubts must be resolved in favor of the existence of triable issues of fact." *Id.*

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "The *Haines* rule applies to all proceedings involving a pro se litigant, including . . . summary judgment proceedings." *Hall*, 935 F.2d at 1110 n. 3 (citations omitted). However, the court cannot be a pro se litigant's advocate. *Yang v. Archuleta*, 525 F. 3d 925, 927 n. 1 (10th Cir. 2008).


III.     Analysis

A.     Applicable Constitutional Law

Mr. Baird cites as the legal authority for his claims the First, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, the Colorado Constitution, and CDOC administrative regulations.

To the extent that Mr. Baird refers to the Fifth Amendment, the Fifth Amendment

due process clause protects only against due process violations caused by federal government actors.  There is no allegation here of conduct by any federal government actor.  The prison where the events occurred is a state facility and Defendants are state employees.  Mr. Baird fails to state a claim pursuant to the Fifth Amendment.

To the extent that Mr. Baird alleges violation of his Sixth Amendment rights, the Sixth Amendment provides certain rights "[i]n all criminal prosecutions."  U.S. CONST. Amend. VI.  Mr. Baird does not adequately allege any basis for his Sixth Amendment claim, *i.e.*, right to criminal counsel, Confrontation Clause, speedy trial, etc.  Mr. Baird does not allege any facts pertaining to a criminal prosecution.  Mr. Baird has not alleged any facts linking Defendants' conduct to any Sixth Amendment violation or indicating how Defendants' actions restricted or infringed upon his protected Sixth Amendment rights.  Mr. Baird fails to state a claim upon which relief can be granted under the Sixth Amendment.

To the extent that Mr. Baird is alleging a violation of state law, § 1983 creates a cause of action where a  "person . . . under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges or immunities secured by the Constitution."  Section 1983 does not create any substantive rights; rather, it creates only a remedy for violations of rights secured by federal statutory and constitutional law.  *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979).  To establish a claim under § 1983, a plaintiff must prove he was deprived of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed under color of law.  *American Mfrs. Mut. Ins. Co. v.*

4

*Sullivan*, 526 U.S. 40, 49-50 (1999). "Section 1983 does not . . . provide a basis for redressing violations of state law, but only for those violations of federal law done under color of state law." *Jones v. City & County of Denver*, 854 F.2d 1206, 1209 (10th Cir. 1988). *See also Malek v. Haun*, 26 F.3d 1013, 1016 (10th Cir.1994) ("a violation of state law alone does not give rise to a federal cause of action under § 1983").

To the extent that Mr. Baird is alleging a violation of prison administrative regulations, "failure to adhere to administrative regulations does not equate to a constitutional violation." *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) (citing *Davis v. Scherer*, 468 U.S. 183, 194 (1984)). *See also Gaines v. Stenseng*, 292 F.3d 1222, 1225 (10th Cir. 2002) ("To the extent [plaintiff] seeks relief for alleged violations of state statutes and prison regulations, however, he has stated no cognizable claim under § 1983.") (citations omitted); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) ("[A] prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process . . . ."). Mr. Baird may not prevail on a § 1983 claim based on any alleged violation of an administrative regulation.

To the extent that Mr. Baird alleges negligent conduct (*see* doc. # 2 at p. 6 of 8), liability under § 1983 may not be predicated on negligence. *See Daniels v. Williams*, 474 U.S. 327, 330-32, 106 S. Ct. 662 (1986) (allegations of mere negligence are not cognizable in any § 1983 claim, regardless of the theory or clause of the Constitution used to justify the complaint); *Woodward v. City of Worland*, 977 F.2d 1392, 1399-1400 (10th Cir. 1992) ("negligence and gross negligence do not give rise to section 1983 liability").

Mr. Baird's claim based on right of access to the courts has been viewed as an

5

aspect of the freedom of petition clause of the First Amendment, *Harrison v. Springdale Water and Sewer Comm'n*, 780 F.2d 1422, 1427 n. 7 (8th Cir. 1986), as guaranteed by the Fourteenth Amendment.[2]  *See Bounds v. Smith*, 430 U.S. 817, 822 (1977) (The Due Process Clause of the Fourteenth Amendment guarantees state inmates the right to "adequate, effective, and meaningful" access to the courts.).  *See also Green v. Johnson*, 977 F.2d 1383, 1389 (10th Cir. 1992) ("The constitutional right of access to the courts is guaranteed by the Due Process Clause[ ] of the . . . Fourteenth Amendment[ ]."); *Nordgren v. Milliken*, 762 F.2d 851, 853 (10th Cir. 1985) (prisoner's constitutional right of access to the courts is accorded by article 4 of the Constitution and the Fourteenth Amendment, as well as by the First Amendment right to petition). The court proceeds, *infra.*, to evaluate Mr. Baird's claim for denial of access to the courts.

B.     Conspiracy Allegation

Mr. Baird alleges that Defendants conspired to violate his constitutional rights. (*See* doc. # 2 at p. 4 of 8 ¶ 27, p. 7 of 8 ¶ 44).  Civil conspiracy is defined as "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another; and an overt act that results in damage."  *Baker v. Smith*, 771 F. Supp. 1156, 1158 (D. Kan. 1991)

---

[2]     "The Fourteenth Amendment provides that no state shall 'deprive any person of life, liberty, or property, without due process of law.' " *Estate of DiMarco v. Wyoming Dept. of Corrections*, 473 F.3d 1334, 1339 (10th Cir. 2007) (quoting U.S. Const. Amend. XIV).

(internal quotation marks and citation omitted).  Mr. Baird has made nothing more than a conclusory allegation of a conspiracy and fails to allege facts with sufficient specificity to suggest the existence of any of the elements of a conspiracy.  Nor has Mr. Baird presented any evidence of a conspiracy.  Mr. Baird's claim is properly dismissed.  *See Merritt v. Hawk*, 153 F. Supp. 2d 1216, 1225 (D. Colo. 2001) ("[C]onclusory allegations that defendants acted in concert, or conspired without specific factual allegations to support such assertions are insufficient.") (internal quotation marks and citation omitted); *Buckley v. Gomez*, 36 F. Supp. 2d 1216, 1221 (S.D. Cal. 1997) ("Where a complaint contains merely conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights, it must be dismissed.") (citations omitted).

C.      Liability under § 1983 of Defendants in their Individual Capacities

Mr. Baird is suing Defendants in both their official and individual capacities.  (*See* doc. # 2 at p. 1 of 8).   To the extent that Mr. Baird is suing Defendants in their individual capacities, individual liability under § 1983, regardless of the particular constitutional theory, must be based upon personal responsibility.  *See Foote v. Spiegel*, 118 F.3d 1416, 1423-24 (10th Cir. 1997) (individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation) (citation omitted);  *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (personal participation is an essential allegation in a civil rights action) (citation omitted);  *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a § 1983 claim.").

A defendant may not be held liable merely because of his or her supervisory

7

position. *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996).  Government officials

may not be held liable for the unconstitutional conduct of their subordinates under a

theory of *respondeat superior. Escobar v. Reid*, 668 F. Supp. 2d 1260, 1290 (D. Colo.

2009) ("*respondeat superior* is not within the purview of § 1983").  "There is no concept

of strict supervisor liability under § 1983."  *Serna v. Colorado Dept. of Corrections*, 455

F.3d 1146, 1151-52 (10th Cir. 2006).  "Supervisors are only liable under § 1983 for their

own culpable involvement in the violation of a person's constitutional rights."  *Id.*  There

must be an affirmative link between the alleged constitutional violation and the

defendant's own participation or failure to supervise.  *Butler v. City of Norman*, 992 F.2d

1053, 1055 (10th Cir. 1993).  *See also McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir.

1983) (an individual cannot be held liable in a section 1983 action unless he

"participated or acquiesced" in an alleged constitutional violation);  *Stidham v. Peace*

*Officer Standards and Training*, 265 F.3d 1144, 1157 (10th Cir. 2001) (for § 1983 claim,

affirmative link between the defendant's conduct and any constitutional violation "must

be alleged in the complaint as well as proven at trial").

Defendants Smelser, Wilson, Fleschaker, Laughlin, and Hernandez argue that

Mr. Baird's claims against them must be dismissed for failure to allege the requisite

personal participation.  Mr. Baird's allegations that he has been denied meaningful

access to the courts by Defendants through denial of adequate access to the law library

are all based on the alleged acts of CCCF Library Supervisor Linda Lyons and her

implementation of library policies.  Mr. Baird then alleges that "the other Defendant(s)

are guilty as well because they are overseers of the law library access program at

CCCF."  (*See* doc. # 2 at p. 5 of 8 ¶ 33).  Mr. Baird argues that Defendant Smelser

8

"should be held . . . accountable for [his subordinates," that "[h]e runs this prison for CCA and I'm sure they as his employer expect him to have full knowledge of all operations on a daily basis," and that "[h]e became aware of . . . Mr. Baird's denial to the law library by CCA . . . through the Kite and 5-1-C process[ ]." (*See* doc. # 39 at pp. 10-11 of 55 ¶ 16).

Mr. Baird argues that Defendant Wilson "has knowledge of the legal access program" and "knew of grievances being filed by Mr. Baird and the Constitutional violations by CCA that had been addressed in the grievances." (*See* doc. # 39 at p. 11 of 55 ¶ 17). Mr. Baird argues that Defendant Hernandez "is the grievance coordinator" and that her "neglect . . . of her duties over seeing the grievance process resulted in a delay to Mr. Baird's appeal processes . . . ." (*See* doc. # 39 at pp. 11, 35-36 of 55). Mr. Baird argues that Defendant Fleschaker has "responsibility as supervisor over the library's [sic] and Ms. Lyons . . . ," "had complete knowledge of Mr. Baird's constitutional rights being violated by CCA and did not do anything to stop these violations," and responded to some of Mr. Baird's grievances. (*See* doc. # 39 at pp. 12-13, 32, 38 of 55 ¶ 18; *see also* audio recording of June 23, 2010 motion hearing (Mr. Baird indicated that his claims against Defendant Fleschaker are based on the denial of grievances)). Mr. Baird argues that Defendant Laughlin "being the first person with first hand knowledge of Mr. Baird's problems with law library access . . . gained this knowledge when he read and delivered all of my grievances to Ms. Hernandez . . ." and that Defendant Laughlin "sat in the visitation room for 3.5 hours while [ADC counsel] Mr. Fritsche and I discussed my Colorado appeal." (*See* doc. # 39 at p. 13 of 55).

To the extent that Mr. Baird attempts to hold Defendants liable on the basis that

they were aware of or denied grievances, without an allegation or evidence of direct responsibility for the alleged violations, Defendants cannot be held liable for an alleged constitutional violation. The Tenth Circuit has repeatedly held "that the denial of . . . grievances alone is insufficient to establish personal participation in the alleged constitutional violations." *Whitington v. Ortiz*, 307 Fed. Appx. 179, 193 (10th Cir. 2009) (internal quotation marks and citation omitted).[3] *Accord, George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."). There is no basis for holding Defendants liable for the denial of grievances. Mr. Baird's allegations that Defendants were put on notice by grievances do not provide adequate factual grounds that Defendants were personally involved in the violation alleged. By reviewing a grievance, Defendants could not have participated in the alleged conduct that occurred before the grievance was filed. Mr. Baird's allegations regarding the filing of grievances are not sufficient to support his claim that Defendants violated his right to access to the courts.

It is not alleged or demonstrated that these Defendants had any specific knowledge of Mr. Baird's circumstances. Mr. Baird's allegations and evidence do not support a claim that these Defendants had any direct involvement in, personal participation in, or supervisory liability for the alleged violation. Mr. Baird has not adequately alleged or demonstrated "an affirmative link between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates." *Serna*, 455 F.3d at 1151 (internal

---

[3]     Copies of unpublished decisions cited are attached to this Recommendation.

10

quotation marks and citations omitted).   To the extent that Mr. Baird attempts to hold Defendants liable as "overseers" of their "subordinates," he fails to state a claim for which relief can be granted.

There is no evidence that Defendants Smelser, Wilson, Fleschaker, Laughlin, or Hernandez personally participated in any unconstitutional actions, or that they exercised control, directed, or tacitly authorized any unconstitutional actions.   Mr. Baird's failure to allege or demonstrate the requisite personal participation leaves no basis for holding Defendants Smelser, Wilson, Fleschaker, Laughlin, or Hernandez individually liable under § 1983 for the alleged denial of access to the courts.   The claims alleged against these Defendants pursuant to 42 U.S.C. § 1983 are properly dismissed from this action. The court proceeds, *infra.*, to evaluate Mr. Baird's claim for denial of access to the courts against the remaining Defendants.

D.     Denial of Access to the Courts

Prison inmates have a constitutional right to meaningful access to the courts. *Bounds v. Smith*, 430 U.S. at 823.   That right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828.   "Conversely, prison officials may not affirmatively hinder a prisoner's efforts to construct a nonfrivolous appeal or claim." *Green v. Johnson*, 977 F.2d 1383, 1389 (10th Cir. 1992).   "Any deliberate impediment to access [to the courts], even a delay of access, may constitute a constitutional deprivation." *Id.* (internal quotation marks and citation omitted).

11

Although providing access to a law library is an acceptable means of effectuating the right of access to the courts, the United States Constitution does not guarantee prisoners "an abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  Access to the law library may be restricted, as long as the restrictions are reasonable.  *See Johnson v. Avery*, 393 U.S. 483, 490 (1969). Inmates need not be afforded unlimited access to a library.  *Twyman v. Crisp*, 584 F.2d 352, 358 (10th Cir. 1978).  "[R]estricted access to the law library is not per se denial of access to the courts."  *Id.* at 357.  Prison policies which reasonably limit times, places and the manner in which inmates may engage in legal research and the preparation of legal papers are permissible as long as the regulations do not frustrate access to the courts.  *Id.* at 358.  *See also Shell v. Brun*, 585 F. Supp. 2d 465, 468 (W.D.N.Y. 2008) ("Prison officials may place reasonable restrictions on inmates' use of facility law libraries, as long as those restrictions do not interfere with inmates' access to the courts.").  Prison officials need only provide inmates with "a reasonably adequate opportunity" to present their legal claims.  *Petrick v. Maynard*, 11 F.3d 991, 994 (10th Cir. 1993) (quoting *Bounds v. Smith*, 430 U.S. at 825).

At CCCF, the general library and the law library are located in the same building and both libraries are open 162 hours per month. (*See* Declaration of Linda Lyons, Exhibit A-1 to Defendants' Motion (doc. # 24-1) at ¶ 5).  Inmates seeking access to the law library may submit a request for a law library session to the Library Supervisor. (*See id.* at ¶ 3).  Defendant Lyons is employed by CCA as the Library Supervisor at CCCF.  (*See id.* at ¶ 1).  Inmates with verifiable pending court deadlines are given priority on scheduling access to the law library computers.  (*See id.* at ¶ 4).  In addition

12

to requesting law library sessions, all inmates at CCCF have access to the law library during the general library time scheduled for their housing unit. (*See id.* at ¶ 6). All housing units are provided general library access three times a week. The general library sessions are Monday from 1:45 p.m. to 4:00 p.m.; Tuesday and Wednesday from 1:45 p.m. to 4:00 p.m. and 7:00 p.m. to 8:30 p.m.; and Thursday, Friday, and Saturday from 8:00 a.m. to 10:00 a.m. and 1:45 p.m. to 4:00 p.m. (*See* doc. # 24-1 at ¶ 6). CCCF staff sets new movement schedules for all the housing units every six months to allow inmates different hours of library time. (*See id.* at ¶ 6). CCCF inmates do not have to submit requests for law library session on the first of each month. An inmate may submit a request for a law library session during any of his housing unit's general library time for any available law library slots. (*See* doc. # 24-1 at ¶ 4).

Inmates with general library time may take legal research books from the law library into the general library as long as their units have general library time. (*See* doc. # 24-1 at ¶ 8). All law library materials are required to be returned to the law library ten minutes before the house unit's general library time has expired. (*See id.* at ¶ 8; CCCF Memorandum to all inmates from Linda Lyons dated 2/2/2009, Exhibit A-2 to Defendants' Motion (doc. # 24-2)). If a computer is available in the law library, and an inmate is in the general library with his housing unit and wants to use a computer, the inmate will be allowed access to the open computer in the law library. (*See* doc. # 24-1 at ¶ 9). CCCF inmates are allowed up to five computer disks to save their legal work. (*See* doc. # 24-1 at ¶ 7; CCCF Law Library Users Agreements, Exhibit A-4 to Defendants' Motion (doc. # 24-4)).

Mr. Baird arrived at CCCF on March 17, 2008. (*See* Complaint (doc. # 2) at p. 2

13

of 8, ¶ 9).  During the month of March 2008, Mr. Baird only made one request for a law library session.  On March 21, 2008, Baird requested a law library session for March 31, 2008. His request was granted the same day.  (*See* doc. # 24-1 at ¶ 10; CCCF Request for Law Library Session dated 3/21/2008, Exhibit A-3 to Defendants' Motion (doc. # 24-3)).

Pursuant to CCCF library policies, Mr. Baird used a law library computer twenty nine (29) times in the six-month period of October 2009 through March 2010.  (*See* doc. # 24-1 at ¶¶ 13-18).  Mr. Baird also had access to the law library each time his housing unit had general library time, three times per week.  (*See id.* at ¶ 10).  In October 2009, Mr. Baird accessed a law library computer on October 13th, October 23rd, and October 24th.  (*See* doc. # 24-1 at ¶ 11; CCCF Incident statements, Exhibit A-5 to Defendants' Motion (doc. # 24-5)).  On October 21, 2009, Mr. Baird came to the library with his unit but did no legal research.  (*See* doc. # 24-7 at p. 3 of 5).  In November 2009, Mr. Baird accessed a law library computer on November 3rd, November 5th, November 10th, November 12th, November 13th, November 17th, November 19th, November 20th, and November 24th.  (*See* doc. # 24-1 at ¶ 12; CCCF Incident statements, Exhibit A-6 to Defendants' Motion (doc. # 24-6)).  In December 2009, Mr. Baird accessed a law library computer on December 2nd, December 3rd, December 4th, December 5th, December 8th, December 10th, and December 29th. (See doc. # 24-1 at ¶ 13; CCCF Incident statements, Exhibit A-7 to Defendants' Motion (doc. # 24-7); doc. # 39 at p. 49 of 55).  On December 10 and 11, 2009, Mr. Baird also came to the library with his unit but did no additional legal research.  (*See* doc. # 24-7 at p. 3 of 5).  On December 30, 2009, Mr. Baird did not attend the library session with his unit.  (*See* doc. # 24-7 at p. 5 of 5).

14

In January 2010, Mr. Baird accessed a law library computer on January 5th, January 7th, January 28th, and January 29th. (*See* doc. # 24-1 at ¶ 14; CCCF Incident statements, Exhibit A-8 to Defendants' Motion (doc. # 24-8)). On January 21, 2010, Mr. Baird did not appear for his scheduled afternoon session. (*See* doc. # 24-8 at p. 4 of 5). Mr. Baird did not spend the entire session on the computer and did other things. (*See* doc. # 24-8 at p. 5 of 5). In February 2010, Mr. Baird accessed a law library computer on February 2nd, February 19th, and February 20th. (*See* doc. # 24-1 at ¶ 15; CCCF Incident statements, Exhibit A-9 to Defendants' Motion (doc. # 24-9)). On February 4 and 5, 2010, Mr. Baird came to the library but did not use the computer. (*See* doc. # 24-9 at p. 2 of 3). In March 2010, Mr. Baird accessed a law library computer on March 11th, March 12th, and March 16th. (*See* doc. # 24-1at ¶ 16; CCCF Incident statements, Exhibit A-10 to Defendants' Motion (doc. # 24-10)). On March 11 and 17, 2010, he did not use the computer for the entire sessions. (*See* doc. # 24-10 at pp. 2-3 of 3).

While Mr. Baird disputes the total number of hours the law library is open, the evidence of Mr. Baird's utilization of the law library and computers and his access to the law library by request and three times per week with his housing unit supports the court's conclusion that the restrictions on access to the law library are reasonable. *See Penrod v. Zavaras*, 94 F.3d 1399, 1403-04 (10th Cir. 1996) (A policy which allows inmates access for 1 to 5 hours per week upheld as reasonably related to a legitimate penal interest in security); *White v. Gregory*, 87 F.3d 429, 430 (10th Cir. 1996) (A policy which allows an inmate access to the law library for only two hours per week does not violate the Constitution); *Flittie v. Solem*, 827 F.2d 276, 280 (8th Cir. 1987) (inmate's use of prison law library on average of three days per week held to be reasonable

15

restriction imposed for a rational reason).

Next, to state a claim for denial of access to the courts, an inmate must show that he suffered an injury caused by "shortcomings in the library or legal assistance program." *Lewis*, 518 U.S. at 351; *accord Wardell v. Duncan*, 470 F.3d 954 (10th Cir. 2006). In order to satisfy the actual injury requirement, the plaintiff must show that, by denying plaintiff access to the law library, prison officials frustrated or impeded the plaintiff's ability to file non-frivolous direct appeals from his conviction, a habeas corpus petition or a civil rights claim pursuant to § 1983 "'to vindicate basic constitutional rights.'" *Lewis*, 518 U.S. at 351, 354-55. *See also Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) ("To state a claim for denial of access to the courts[,] . . . a plaintiff must allege that the defendant took or was responsible for actions that hindered [a plaintiff's] efforts to pursue a legal claim.") (quotations omitted); *Peterson v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998) ("To present a viable claim for denial of access to courts, however, an inmate must allege and prove prejudice arising from Defendants' actions."); *Ramirez v. Holmes*, 921 F. Supp. 204, 207 (S.D.N.Y. 1996) (Where a plaintiff claims that prison officials denied him access to the law library, the plaintiff "must allege that the deprivation proximately caused some prejudice or denial of a legal claim."). "[T]he injury only occurs when prisoners are prevented from attacking their sentences or challenging the conditions of their confinement. *Lewis*, 518 U.S. at 356. "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.*

Mr. Baird has not adequately demonstrated any prejudice resulting from the law library restrictions that he challenges. Mr. Baird argues that he was impaired in

16

appealing a South Carolina conviction that was used as an aggravating factor in a sentence imposed by a Colorado court.  (*See* doc. # 39 at pp. 2, 3, 7, 13, of 55).  Mr. Baird's own evidence indicates that his appeal of the South Carolina conviction was dismissed on April 22, 2008 based on Mr. Baird's failure to timely serve the notice of appeal.  (*See* Order of the Supreme Court of South Carolina (doc. # 39 at p. 22 of 55)).  "When no petition for reinstatement was received, the Court of Appeals sent the remittitur on May 12, 2008."  (*See id.*).  By a motion filed on June 6, 2008, Mr. Baird asked the Supreme Court of South Carolina to review the matter.  (*See id.*).  "When no petition for rehearing or reinstatement was received by the Court of Appeals, the Court of Appeals properly sent the remittitur."  (*See id.*) (citation omitted).  "The sending of the remittitur ended appellate jurisdiction over this case."  (*See id.*) (citation omitted).  Mr. Baird's request for the Supreme Court of South Carolina to review the decision of the Court of Appeals was denied.  Mr. Baird alleges that he arrived at CCCF on March 17, 2008.  Appellate jurisdiction over the case in South Carolina ended on May 12, 2008.  There is evidence before the court that Mr. Baird made his first request for South Carolina legal materials in March of 2010.  (*See* doc. # 24-10 at p. 2 of 3; doc. # 23 at pp. 1-2 of 2;  doc. # 39 at pp. 25-26, 31 of 55).  Mr. Baird's allegations of denial of access to the law library after May 12, 2008 could not have impaired his ability to pursue a non-frivolous appeal in a case that had already been dismissed.

Mr. Baird's argument that he was impaired in the appeal of a Colorado conviction is likewise inadequately supported by the evidence.  While Mr. Baird provides no specific facts regarding his Colorado appeal, he indicates that in April of 2009 he met with his attorney who was representing him in the appeal of his Colorado case.  (*See*

17

Mr. Baird's Response (doc. # 39) at p. 13 of 55).  Mr. Baird has not demonstrated that the limitations on his *pro se* research in the prison law library impaired his appeal of a case in which he was represented by appellate counsel.

To the extent that Mr. Baird alleges he wished to pursue post-conviction relief in South Carolina and Colorado, he fails to demonstrate how the law library restrictions in fact impaired any of his efforts.  Mr. Baird's allegations and evidence do not specifically connect the law library restrictions to any injury.  Mr. Baird apparently did file a postconviction challenge to a Colorado conviction, as he indicates that "the Garfield County Courts denied Mr. Baird's 35-c in August of 2009" (*See* doc. # 39 at p. 3 of 55). Mr. Baird's allegations and arguments are too conclusory to state or support a plausible claim that he was impeded in his effort to pursue a nonfrivolous legal claim.  (*See* doc. # 39 at pp. 2, 7, of 55 ("I have not been able to pursue this South Carolina Habeas Corpus . . . or his Colorado Habeas Corpus;" "Mr. Baird has sustained injury by not being allowed to pursue his postconviction in Colorado or a Habeas in the state of South Carolina that the courts in Colorado used as an aggravating factor").  He does not state or demonstrate any facts about deadlines, court orders, or the status of the cases in which he seeks post-conviction relief.  "[C]onclusory allegations are not sufficient to state a constitutional violation."  *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) (citation omitted).  Mr. Baird has not provided evidence regarding how the alleged limited access to the law library specifically impeded his ability to timely file habeas corpus petitions in South Carolina or Colorado.   Mere allegations of an inadequate law library or legal assistance program do not themselves sufficiently support an action seeking vindication of the right to meaningful court access.  *See Lewis v. Casey*, 518

18

U.S. at 351 ("an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense").  As Mr. Baird has not demonstrated that the CCCF library policies impaired his access to the courts or actually caused him any legal injury, he fails to support his claim for denial of access to the courts.

E.     Liability under § 1983 of Defendants in their Official Capacities

As Defendant CCA operates CCCF pursuant to a contract with the CDOC, it becomes a state actor and is subject to liability under § 1983 for the constitutional violation alleged in this case.  *See West v. Atkins*, 487 U.S. 42, 54-57 (1988) (holding that a private doctor treating prisoners under a contract with state prison authorities acted under color of state law for purposes of § 1983 suit alleging Eighth Amendment violation);  *Smith v. Cochran*, 339 F.3d 1205, 1215 16 (10th Cir. 2003) ("[P]ersons to whom the state delegates its penological functions, which include the custody and supervision of prisoners, can be held liable for violations of the Eighth Amendment.") (citation omitted).  Thus, to the extent Mr. Baird sues Defendants in their official capacities under § 1983, he is actually attempting to impose liability on their employer, CCA.  *See Meade v. Grubbs*, 841 F.2d 1512, 1529 (10th Cir. 1988) ("[a] judgment against a public servant in his official capacity imposes liability on the entity he represents");  *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (suit against a state official in his or her official capacity is treated as a suit against the state);  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) ("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As

19

such, it is no different from a suit against the State itself").

The Eleventh Amendment provides: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  Absent considerations not present in this case, the Eleventh Amendment forbids a suit for damages against a state in federal court.  *Ambus v. Granite Board of Education*, 995 F.2d 992, 994 (10th Cir. 1993) (citation omitted).  As a private contractor operating a prison facility for the CDOC, CCA is an arm of the state and any claim for money damages brought against Defendants in their official capacities under § 1983 is barred by the Eleventh Amendment.  *Edelman*, 415 U.S. at 663.  Thus, Mr. Baird's claim for monetary damages against Defendants in their official capacities is properly dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

Actions in federal court seeking injunctive relief against state officials are not always barred by the Eleventh Amendment.  *See Ex parte Young*, 209 U.S. 123, 159-60 (1908) (holding that the Eleventh Amendment generally does not bar official-capacity claims seeking prospective injunctive relief from a state official).  *See also Will*, 491 U.S. at 71 n. 10 ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.' ") (quoting *Kentucky v. Graham*, 473 U.S. at 167 n. 14).  However, as Mr. Baird seeks only monetary damages, the court need not further address liability of the Defendants in their official capacities.

Finally, "[i]n order to establish a § 1983 claim against a supervisor for the

unconstitutional acts of his subordinates, a plaintiff must first show the supervisor's subordinates violated the constitution." *Serna v. Colorado Dept. of Corrections*, 455 F.3d 1146, 1151 (10th Cir. 2006).  As the court has determined, *supra*., that Mr. Baird has not carried his burden to show violation of his constitutional right of access to the courts, he has not demonstrated liability of Defendants in their official capacities or of Defendants CCA or CCCF.  There is no evidence to establish that CCA or CCCF, through deliberate conduct, official customs or policies, violated Mr. Baird's constitutional right of access to the courts.[4]

F.     Equal Protection

Mr. Baird may be alleging an equal protection claim.  (*See* doc. # 2 at pp. 2, 5 of 8 ("CCCA and Ms. Lyons' rules for legal access program allowed the same twenty inmates unlimited access to the law library for all sessions" . . . ; ""Defendant(s) instructions to the same Twenty, (20), inmates on filling out one legal access program request form is on the first of every month, guarantees them access for every session in the month;" *see also* doc. # 39 at pp. 49-55 of 55).  "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  The

---

[4]     Also, CCCF is not a suable entity because it lacks a legal identity apart from CCA.  *See Steger v. Hickey*, 2009 WL 137314 (W.D. Okla. Jan 20, 2009) (citation omitted).  All claims against the facility should therefore be dismissed for failure to state a claim upon which relief may be granted.

challenged disparate treatment must be the result of purposeful discrimination. *Harris v. McRae*, 448 U.S. 297, 323 n. 26 (1980). To properly allege an equal protection claim, a plaintiff must plead sufficient facts to "demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

Mr. Baird has not alleged that he was treated differently than any similarly situated inmates. *See Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1988) ("In order to assert a viable equal protection claim, [Mr. Baird] must first make a threshold showing that [he was] treated differently from others who were similarly situated to [him]."); *Jennings v. City of Stillwater*, 383 F.3d 1199, 1215 (10th Cir. 2004) (plaintiff bears the burden of proof on this issue). An equal protection claim is entirely conclusory and without merit where a plaintiff fails to allege facts that they were treated differently than those similarly situated. *Cosco v. Uphoff*, 195 F.3d 1221, 1222 (10th Cir. 1999). Mr. Baird has not specified which inmates were treated more favorably, how other inmates were similarly situated to him, the extent of their access to the law library, or the status of their pending legal matters that required access to the law library. "Absent a threshold showing that [he] is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim." *Klinger v. Department of Corrections*, 31 F.3d 727, 731 (8th Cir. 1994).

Nor has Mr. Baird alleged or demonstrates that Defendants acted based upon a discriminatory intent or motive. *See Watson v. City of Kansas City, Kansas*, 857 F.2d 690, 694 (10th Cir. 1996) ("A plaintiff in an equal protection action has the burden of

22

demonstrating discriminatory intent") (citations omitted);  *Villanueva v. Carere*, 85 F.3d, 481, 485 (10th Cir. 1996) (Although "[t]he discriminatory purpose need not be the only purpose, . . . it must be a motivating factor in the decision").  Mr. Baird's allegations are entirely conclusory and fail to state or demonstrate an equal protection claim.

IV.     Conclusion

Accordingly, IT IS RECOMMENDED that Defendants' Motion for Summary Judgment (filed July 22, 2010) (doc. # 24) be GRANTED and summary judgment enter on the Complaint (doc. # 2) in favor of Defendants and against Plaintiff.

Further, IT IS ORDERED that:

1.      Plaintiff's Motion for Sanctions (filed November 22, 2010) (doc. # 41) is DENIED.

2.      Plaintiff's Motion for Investigation (filed December 13, 2010) (doc. # 44) is DENIED.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's

objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado this 5th day of January, 2011.

BY THE COURT:

 s/ Craig B. Shaffer
United States Magistrate Judge